**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| THE CINCINNATI ENQUIRER,<br><br>              Plaintiff,<br><br>vs.<br><br>UNITED STATES DEPARTMENT OF JUSTICE, *et al.*,<br><br>              Defendants. | CASE NO. 1:20-CV-758<br><br>JUDGE SUSAN J. DLOTT<br><br>**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES SETTING FORTH THE PROPER LEGAL STANDARD FOR CONSIDERATION OF ADDITIONAL FOIA EXEMPTIONS** |

**I. INTRODUCTION**

On May 3, 2021, the Court entered an order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment (Doc. 19) and the Enquirer's Cross-Motion for Summary Judgment (Doc. 22) (the "Summary Judgment Order"). (*See* Doc. 26.) In that Order, the Court concluded that Defendants did not comply "with FOIA to the extent that they categorically declined to search for and produce certain documents." (*Id.* at PageID 172.) The Court ordered Defendants to submit the documents responsive to the FOIA requests about the Ryan Jacobs investigation and a proposed *Vaughn* index to the Court for *in camera* review. (*Id.* at PageID 188.)

On July 2, 2021, to comply with the Summary Judgment Order, Defendants submitted a "bare-bones *Vaughn* index and 205 pages of responsive documents to the Court for review." (Doc. 28 at PageID 194.) Defendants' *Vaughn* index asserted, for the first time, a host of other FOIA exemptions – the exemptions stated in 5 U.S.C. § 552(b)(3), (5), (6), and (7)(D), (E), and (F) – apply to exclude the responsive documents from disclosure. (*Id*. at PageID 195.)

Defendants, however, did not brief the legal standards to apply the newly asserted exemptions. (*Id.*) The Defendants also failed to provide a memorandum or affidavit explaining why and to which particular sections of each set of documents the newly asserted exemptions apply. (*Id.*)

On July 28, 2021, the Court enter an Order (Doc. 28) amending its prior Summary Judgment Order. (Doc. 26.) The Court's July Order denied Defendants' Motion for Summary Judgment in full. (Doc. 28.) The July Order also ordered Defendants to, among other things, submit for *in camera* review a detailed revised *Vaughn* index, memorandum, or affidavit explaining the basis for asserting that the Remaining Jacobs Documents were protected from disclosure under the newly asserted FOIA exemptions. (*Id.* at PageID 199.)

The Court's July Order also permitted The Cincinnati Enquirer to submit a brief memorandum setting forth the proper legal standards to apply when considering the newly asserted FOIA exemptions made by Defendants. (*Id.* at PageID 200.) The Enquirer submits the legal standards contained in Section II *infra* for the Court's consideration.

**II.    ARGUMENT**

    **A.    Proper Legal Standards When Considering Defendants' Assertion of Additional FOIA Exemptions Not Previously Briefed.**

        1.    <u>FOIA Exemption 3 – 5 U.S.C. § 552(b)(3).</u>

Exemption 3 protects information "specifically exempt from disclosure by statute . . . if that statute . . . (A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld; and (B) if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph." 5 U.S.C. § 552(b)(3).

In order to properly claim that withheld information falls within Exemption 3, the burden is on the agency to show that "the statute claimed is one of exemption as contemplated by

Exemption 3 and that the withheld material falls within the statute." *Elec. Priv. Info. Ctr. v. Off. of Dir. of Nat'l Intel.*, 281 F. Supp. 3d 203, 212 (D.D.C. 2017) (quoting *Larson v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009)). "Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage." *Id.* at 212 (quoting *Ass'n of Retired R.R. Workers v. U.S. R.R. Retirement Bd.*, 830 F.2d 331, 336 (D.C. Cir. 1987)) (citation omitted).

There is additional case law addressing the legal standards for Exemption 3 as it relates to specific claimed statutes. Due to Defendants' failure to previously allege or brief the applicability of Exemption 3 to the requested documents, the Enquirer is without knowledge or information of the specific statutes on which Defendants rely. The Enquirer cannot address these additional legal standards without knowledge of the specific statutes relied upon by Defendants, but would request an opportunity to address those statutes if Defendants raise them as a basis for applying an exemption.

2. FOIA Exemption 5 – 5 U.S.C. § 552(b)(5).

Exemption 5 protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." *United States Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021) (quoting 5 U.S.C. § 552(b)(5)). "[Exemption 5] incorporates the privileges available to Government agencies in civil litigation. That list includes the deliberative process privilege, attorney-client privilege, and attorney work-product privilege." *Id.* (citing *Department of Interior v. Klamath Water Users Protective Assn.*, 532 U.S. 1, 8 (2001)).

3

a.   *The Deliberative Process Privilege.*

The deliberative process privilege is a form of executive privilege. *See id*. "The deliberative process privilege shields from disclosure 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated[.]'" *Id*. (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975)).

The deliberative process privilege does not apply to "documents that embody a final decision, because once a decision has been made, the deliberations are done." *Id.* "The privilege therefore distinguishes between predecisional, deliberative documents, which are exempt from disclosure, and documents reflecting a final agency decision and the reasons supporting it, which are not." *Id*. at 785 (citing *Renegotiation Bd. v. Grumman Aircraft Engineering Corp.*, 421 U.S. 168, 186 (1975)). "Documents are 'predecisional' if they were generated before the agency's final decision on the matter, and they are 'deliberative' if they were prepared to help the agency formulate its position." *Id.* (citing *Sears*, 421 U.S. at 150–152; *Grumman*, 421 U.S. at 184–186.) A document is "final" when it "communicates a policy on which the agency has settled." *Id.*

"To decide whether a document communicates the agency's settled position, courts must consider whether the agency treats the document as its final view on the matter." *Id.* (citing *Sears*, 421 U.S. at 161.) "When it does so, the deliberative 'process by which governmental decisions and policies are formulated' will have concluded, and the document will have 'real operative effect.'" *Id.* (quoting *Sears*, 421 U.S. at 160.)

b.   *Attorney-Client Privilege.*

In order to "demonstrate that the attorney-client privilege justifies withholding documents, Defendants must establish that "the information in those documents was communicated to or by an attorney as part of a professional relationship in order to provide the

4

[DOJ/DEA] with advice on the legal ramifications of its actions." *Mead Data Central, Inc. v. United States Department of the Air Force*, 566 F.2d 242, 253 (D.C.Cir.1977). Attorney-client privilege does not, however, permit withholding documents merely because they are the product of an attorney-client relationship; the DEA/DOJ must also show that the information is confidential. *Id*.

The DEA/DOJ must show that the documents it seeks to withhold under the attorney-client privilege prong of Exemption 5 are based on information supplied to its attorneys by the DEA/DOJ with the expectation of secrecy and not known by or disclosed to any third party. *See Brinton v. Department of State*, 636 F.2d 600, 603–604 (D.C.Cir.1980), *cert. denied*, 452 U.S. 905 (1981).

      c.  **Attorney Work-Product.**

The attorney work-product prong of Exemption 5 protects from disclosure "memoranda prepared by an attorney in contemplation of litigation which set forth the attorney's theory of the case and his litigation strategy." *Sears*, 421 U.S. at 154.

    3.  FOIA Exemption 6 – 5 U.SC. § 552(b)(6).

Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 6 establishes a "two-prong inquiry: (1) whether the file includes personnel, medical, or 'similar' data; and (2) if so, whether disclosure constitutes a 'clearly unwarranted' invasion of privacy." *Rugiero v. U.S. Dep't of Just.*, 257 F.3d 534, 550 (6th Cir. 2001) (citing *Heights Cmty. Cong. v. Veterans Admin.*, 732 F.2d 526, 528 (6th Cir.1984); *United States Dep't of State v. Washington Post Co.*, 456 U.S. 595, 601–02 (1982)).

"Under the threshold requirement, the exception applies to any government 'records on an individual which can be identified as applying to that individual.'" *Id*. (quoting *Washington*

*Post*, 456 U.S. at 601–02) (citation omitted). "Determining whether disclosure works a clearly unwarranted invasion of privacy requires a ***balancing test*** under which courts identify the privacy interest at stake and weigh it against the public interest in disclosure. *Id.* (citing *Heights Cmty. Cong.*, 732 F.2d at 529) (emphasis added).

"The central inquiry is whether public access to the information is tantamount to an invasion of privacy; if so we ask whether such an invasion is justified by any countervailing public benefit from disclosure." *Id*. (quoting *Heights Cmty. Cong.*, 732 F.2d at 529) (citation omitted).

### 4. FOIA Exemptions Under 5 U.S.C. § 552(b)(7).

FOIA Exemption 7 exempts "records or information compiled for law enforcement purposes, but only if certain conditions are met." *Id.* For a law enforcement agency to withhold information under Exemption 7, one of the specific provisions of section 552(b)(7) must apply. *Id.* at 551. The legal standards applying to the relevant specific provisions of Exemption 7 are set forth *infra* Sections II.A.4.a-c.

#### a. ***Exemption 7(D) – 5 U.S.C. § 552(b)(7)(D).***

Documents whose release "could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis," may be withheld or redacted. 5 U.S.C. § 552(b)(7)(D). "Here, the question is not whether the document is of a type the agency normally treats as confidential, but whether the particular source spoke with an understanding of confidentiality." *Rugiero*, 257 F.3d at 551 (citing *United States Dep't of Justice v. Landano*, 508 U.S. 165, 172 (1993)). "Unless a promise of confidentiality is expressly given, the government *is not* entitled to a presumption of confidentiality outside of a narrowly defined set of

6

circumstances supporting such an inference, such as the use of a paid informant." *Id.* (citing *Landano*, 508 U.S. at 173–79).

"Although not defined in the Act, the Supreme Court has defined 'confidential' in this section as referring to a degree of confidentiality less than total secrecy." *Id.* (citing *Landano*, 508 U.S. at 174). If a confidential source is later revealed, the Court nonetheless restricts public access to documents under this section so long as the informant and the agency intended the identity of the source to remain undisclosed at the time the agency compiled the information. *Id.* (citing *Jones v. FBI*, 41 F.3d 238, 249 (6th Cir.1994)).

b. *Exemption 7(E) – 5 U.S.C. § 552(b)(7)(E).*

To justify a withholding under Exemption 7(E), the DEA/DOJ must demonstrate that production of the materials or information would "disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). "This provision, however, only protects techniques and procedures not already well-known to the public." *Rugiero*, 257 F.3d at 551.

c. *Exemption 7(F) – 5 U.S. § 552(b)(7)(F)*

Exemption 7(F) allows the withholding of materials that "could reasonably be expected to endanger the life or physical safety of any individual[.]" 5 U.S. § 552(b)(7)(F). A defendant is "entitled to invoke this exemption if the safety of the individual in question would be jeopardized by revealing his or her identity. *Neuhausser v. U.S. Dep't of Just.*, No. CIV.A. 6:03-531-DCR, 2006 WL 1581010, at *6 (E.D. Ky. June 6, 2006).

## III. CONCLUSION

The Cincinnati Enquirer respectfully requests that the Court apply the legal standards contained in Section II *supra* when considering the Defendants' newly asserted and not previously briefed FOIA exemptions.

Respectfully Submitted,

OF COUNSEL:

GRAYDON HEAD & RITCHEY LLP
312 Walnut Street
Suite 1800
Cincinnati, OH 45202
Phone: (513) 621-6464
Fax:    (513) 651-3836

/s/ *Frank M. Schultz*
John C. Greiner (0005551)
J. Stephen Smith (0065216)
Darren W. Ford (0086449)
Frank M. Schultz (0096876)
GRAYDON HEAD & RITCHEY LLP
312 Walnut Street, Suite 1800
Cincinnati, OH  45202
Phone:  (513) 629-2734
Fax:  (513) 333-4316
Email:  jgreiner@graydon.law
            ssmith@graydon.law
            dford@graydon.law
            fschultz@graydon.law

*Counsel for Plaintiff The Cincinnati Enquirer*

11299850.3